Bomberger, Appellant, v. American Iron & Steel Manufacturing Company.

*Negligence—Private way—Projecting pipes—Contributory negligence.*

Where a person drives a covered wagon on a narrow private way with which he is familiar through previous use, and in which at intervals are perpendicular pipes rising from the water main below, extending a few inches above the surface, and usually covered with an iron disk, and such person without descending from his wagon, and without raising the side flaps, attempts to turn the wagon, and one of his horse's feet is caught in the opening of one of the perpendicular pipes, which at the time is uncovered, and the horse is injured so that he had to be killed, no recovery can be had for the loss of the horse from the owner of the land over which the private way extends.

Argued Oct. 25, 1906.    Appeal, No. 193, Oct. T., 1906, by plaintiff, from order of C. P. Lebanon Co., Sept. T., 1904, No. 50, refusing to take off nonsuit in case of Thomas Bomberger v. American Iron & Steel Company.    Before RICE, P. J., PORTER, HENDERSON, MORRISON, ORLADY, HEAD and BEAVER, JJ.    Affirmed.

Trespass to recover damages for death of a horse.    Before EHRGOOD, P. J.

The facts appear by the opinion of the Superior Court.

*Error assigned* was refusal to take off nonsuit.

*George B. Woomer*, for appellant, cited :  Woodruff v. Painter, 150 Pa. 91 ; Lewin v. Pauli, 19 Pa. Superior Ct. 447 ; Cole v. McKey, 66 Wis. 500 (29 N. W. Repr. 279) ; Martin v. Richards, 155 Mass. 381 (29 N. E. Repr. 591) ; Miller v. Hancock, L. R. 2 Queen's Bench Div. [1893] 177 ; Foren v. Rodick, 90

Me. 276 (38 Atl. Repr. 175) ; Polenske v. Lit Brothers, 18 Pa. Superior Ct. 474.

*E. E. McCurdy,* of *Gobin & McCurdy,* for appellee, cited : Nicholson v. Erie Ry. Co., 41 N. Y. 525 ; Larmore v. Crown Point Iron Co., 101 N. Y. 391 (4 N. E. Repr. 752) ; Cusick v. Adams, 115 N. Y. 55 (21 N. E. Repr. 673) ; Rodgers v. Lees, 140 Pa. 475 ; Gillespie v. McGowan, 100 Pa. 144 ; Horstick v. Dunkle, 145 Pa. 220 ; Gramlich v. Wurst, 86 Pa. 74 ; Gillis v. Penna. R. R. Co., 59 Pa. 129.

OPINION BY HEAD, J., April 15, 1907 :

The defendant is the owner of a tract of land in North Lebanon township, near the city of Lebanon, on which it has erected a large manufacturing plant. As part of this plant it had constructed a row of dwelling houses for the use of its employees. In front of this row of houses was an open way which was wholly on the private property of the defendant, and had never been in any way dedicated to public use. Along this way, parallel with the row of houses and distant about eight feet therefrom, was buried a water pipe to supply the houses with water. At regular intervals along this line, where the house supply pipes connected with it, there arose perpendicular pipes through which those in charge could reach the valves below to turn on or shut off the supply of water to the several houses as necessity might require. Each of these upright pipes was several inches in diameter, and the openings at the tops had been covered with iron disks that could be readily removed whenever the occasion to use them would arise. Each protruded several inches above the surface of the ground, and the entire line of uprights could be easily seen by anyone whose duty or interest invited his observation.

The plaintiff was a butcher in the city of Lebanon, and, in the pursuit of his business, had provided a horse and wagon with which his son peddled meat to the outlying communities, and, among others, to the tenants of the row of houses on the defendant's property already described. The testimony of the plaintiff showed that on every week day for at least two weeks prior to the accident which resulted in this litigation his son had driven over this way in full daylight. He was, therefore,

visited with notice of all the conditions of which the proper use of his own senses would have warned him.

On the morning of June 10, 1904, it being a wet morning, the plaintiff's son had driven along this way to the upper end of the row, and, in order to get back by the way he had come, proceeded to turn his horse and wagon. According to his testimony there was not space enough to permit him to turn without backing across the pipe line, and this he undertook to do. The wagon was provided with windows inclosing the front part of it to protect the occupant from the weather, and at this time, on account of the falling rain, these windows were closed. In backing over the pipe line the driver did not alight from the wagon, nor did he even open the windows so that he could see whether or not, at the point he had selected for backing over the line, he was likely to come in contact with one of the uprights. As it happened he backed right over one which was uncovered; his horse's foot went into the opening and became fast, resulting in a broken leg so that he had to be killed.

The plaintiff, alleging that the loss of his horse was caused by the negligence of the defendant, brought this action to recover its value.

We are not disposed to hold, as the learned court below seems to have held, that the plaintiff. was simply a trespasser. But the most that can be fairly claimed for him is that his use of the defendant's property was but permissive, or that he was a mere licensee. Under such circumstances what obligation did the law impose on him to be vigilant? It is well established that even upon a public highway, primarily opened and intended for the passage of vehicles drawn by horses, a traveler is obliged to avoid patent obstructions or dangers of the existence of which the use of his own senses will warn him. Certainly, then, it must follow that where a person voluntarily, in pursuit of his own pleasure or profit, enters upon a narrow way over the private property of another—so narrow, indeed, if we believe the testimony of the plaintiff's son, as to fairly warrant the inference that it was intended rather as a footway than as a driveway—an even greater degree of care and caution on his part would be naturally and reasonably required. If the testimony of the plaintiff shows that the injury of which he com-

plains is attributable in whole, or even in part, to his failure, or that of his servant in charge of his vehicle, to discharge this obvious duty, then the defendant cannot be called upon to respond, even if we assume, which we do not undertake to do, a breach of some legal obligation by the defendant, to have been established by the evidence.

Thomas Bomberger, the plaintiff, in his own testimony gives us the following :

" Q. Could anybody have seen that (the pipe into which the horse stepped) when driving in along there ?   A. Not when he backed around and had his windows closed.   Q. This row of pipes you could easily see as you drove up there ?   A. Yes, you could see them, but when you turn around and wanted to back you could not see.   Q. At this particular place, if the pipe had been to the side of his wagon, one side or the other, and he had looked on the ground, he could have seen that pipe ?   A. Maybe, if he would have looked out.   If we are in a wagon we can't get our head down to look under the wagon.   Q. If you had a clear view of the ground as far as the horse's front foot, you could have seen this pipe ?   A. Yes, sir ; if you lean out over the dasher you could see it.   Q. Did you see this pipe when you delivered meat?   A. I have seen them pipes.   Q. This very pipe ?   A. I expect I seen it. Q. You had to almost see it when you drove there ?   A. Of course when I drove there I had to see that pipe."

It is thus apparent that the exercise of even a moderate degree of care on the part of the driver would have enabled him to easily avoid the danger.   The standpipes were many feet apart, and a person using his eyes could have, without difficulty, selected a point between them where he could have backed over the pipe line with perfect safety.   In order to remain dry and comfortable in his inclosed wagon he chose to practically blindfold himself, and the fate of those " who have eyes but see not " overtook him.   For injuries thus sustained the law affords no relief.   Nam vigilantibus sed non dormientibus leges subveniunt.

Judgment affirmed.